UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AARON LOVETT**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-02879 (TNM) |

**MEMORANDUM ORDER**

After months of initial motions practice and discovery, the parties in this Federal Tort Claims Act case have arrived at the central issue: Was it reasonable for a Secret Service officer to tase Aaron Lovett? That question will either be resolved in a ruling on the pending summary judgment motion or at a bench trial. Lovett is concerned that the question should not be answered by someone with a background in law enforcement. He recently filed a recusal motion, citing my use-of-force training as a police officer and sheriff's deputy. Mot. for Recusal, ECF No. 43. But that training would not lead a reasonable observer to question the Court's impartiality, nor does it supply inappropriate extrajudicial knowledge about the issues at hand. So the Court denies that motion.

**I.**

Some background will help understand the recusal request and its disposition. In December 2022, after a late-night work shift, Lovett was detained in the parking lot of his apartment complex by U.S. Secret Service Uniformed Division Officer Kiounte Lineberger.

Pl.'s Stmt. of Material Facts ¶¶ 27, 32, 36–37.[1]  Officer Lineberger told Lovett that he made the stop because Lovett's vehicle had no license plate. *Id.* ¶ 39.  But after Lovett pointed Lineberger to a license plate in the truck's rear window, Lineberger asked Lovett to stand by. *Id.* ¶¶ 40, 43, 45–46.

As it turns out, Lineberger mistakenly believed Lovett's vehicle had been stolen. *See id.* ¶¶ 47–48.  A dispatcher flagged it as stolen when Lineberger ran the truck's plates. *Id.* ¶ 47.  But Lovett himself had reported the vehicle stolen weeks earlier—and he later found it at a tow lot. *Id.* ¶¶ 49–53.  Lineberger did not know this background, but he also did not tell Lovett that he believed the vehicle had been stolen. *Id.* ¶ 53.  Instead, he told Lovett that the traffic stop was ongoing and called for backup. *See id.* ¶¶ 54–55, 57–58.

Once other officers arrived, the situation escalated. *Id.* ¶¶ 58–62.  Officers began shouting at Lovett. *See id.* ¶ 67.  Confused by conflicting commands, Lovett started yelling and asking why he was detained. *Id.* ¶¶ 60–63, 67.  Officers pushed Lovett against the apartment building's exterior wall. *Id.* ¶¶ 59, 61–62, 68.  Lineberger then drew his taser. *See id.* ¶ 65.  Seconds later, Lineberger discharged the taser while Lovett tried to obey another officer's commands to turn around. *Id.* ¶¶ 74–75, 77–78.  Lovett collapsed. *Id.* ¶¶ 81–82.  With Lovett on the ground, Lineberger used the taser's drive stun function on Lovett's legs. *Id.* ¶ 84.  Officers then handcuffed and arrested Lovett. *Id.* ¶¶ 86, 90.  They also called an ambulance, and it was only once Lovett was in the ambulance that he learned officers believed he had stolen the truck. *Id.* ¶¶ 90–94.

---

[1] This factual summary credits Lovett's version of events, drawing primarily from his statement of undisputed material facts.  *See* Pl.'s Stmt. of Material Facts, ECF No. 46-1.  All record citations refer to the pagination generated by the Court's CM/ECF system.

Lovett later filed this lawsuit. *See* Compl., ECF No. 1. He claims that the officers committed assault, battery, and negligent infliction of emotional distress and that the United States is liable for those torts under the Federal Tort Claims Act. Am. Compl. ¶¶ 160–83, ECF No. 20.[2] The United States seeks summary judgment. Mot. for Summ. J., ECF No. 44. Before handling that motion, the Court considers Lovett's recusal request. Mot. for Recusal, ECF No. 43.

## II.

Pointing to the use of force issues here, Lovett seeks recusal because of my prior law enforcement experience. Mot. for Recusal at 6–9.[3] I previously served as a police officer in Fairfax County, Virginia, and as a part-time deputy sheriff in Madison County, Virginia. Lovett argues that this background supplies inappropriate extrajudicial knowledge and calls into question my impartiality. *Id.* at 6–9; *see* 28 U.S.C. § 455(a), (b)(1). As explained below, those arguments are unpersuasive. So recusal is inappropriate.

Disqualification of federal judges stems from 28 U.S.C. § 455.[4] Subsection b of that statute enumerates five scenarios that compel a judge to withdraw from a case. 28 U.S.C.

---

[2] Lovett originally brought claims against other defendants that have been dismissed. *See* Memorandum Order, ECF No. 32; Minute Entry for December 6, 2024 Hr'g. The only remaining claims are those against the United States under the FTCA.

[3] Lovett alternatively asks that the case be referred to a magistrate judge. *See* Mot. for Recusal at 9, 11. That request must be denied. The Court contacted the parties about magistrate judge referral and the Government did not agree. The Court cannot send the case to a magistrate judge for all purposes without both parties' consent. *See* LCvR 73.1(a) (permitting a magistrate judge to conduct all proceedings, including trial, with "consent of all parties"). Having a magistrate judge just prepare a Report and Recommendation would not dispel a valid recusal concern.

[4] Another statute requires a district court judge's recusal "[w]henever a party . . . files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. Lovett does not invoke this provision, nor has he filed an affidavit that satisfies it.

3

§ 455(b)(1)–(5). Relevant here is that a judge must disqualify himself if he has "a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts concerning the proceeding.*" *Id.* § 455(b)(1) (emphasis added).

If nothing in § 455(b) applies, a judge may still have a duty to recuse under § 455(a). That catchall provision requires disqualification "in any proceeding in which [the judge's] impartiality might reasonably be questioned." *Id.* § 455(a). Section 455(a) incorporates an objective test "made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (statement of Rehnquist, C.J.); *accord In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991).

When considering any request under § 455, "[a] court has broad discretion." *Montgomery v. Barr*, 502 F. Supp. 3d 165, 170 (D.D.C. 2020) (cleaned up). And "there is a presumption against disqualification." *Id.* (cleaned up); *see United States v. Pollard*, 959 F.2d 1011, 1023 (D.C. Cir. 1992) ("[D]isqualification of a judge is not lightly granted.").

\* \* \*

Applying those standards here, Lovett has not shown an appearance of bias or inappropriate extrajudicial knowledge of disputed facts.

First, Lovett has not shown that a reasonable observer would question the Court's impartiality. *See* 28 U.S.C. § 455(a). Courts have repeatedly rejected arguments that a judge with law enforcement experience must recuse from cases involving law enforcement. *See, e.g.*, *Tafero v. Wainwright*, 796 F.2d 1314, 1322 (11th Cir. 1986) (rejecting argument that a trial judge's "distant past [experience as] a highway patrol officer" mandated his recusal from a case involving a police officer's murder); *United States v. Cammarata*, No. 21-CR-00427-01, 2024 WL 246027, at \*4 (E.D. Pa. Jan. 22, 2024) ("The mere fact that the Court served as a sheriff

4

does not inherently indicate a bias toward law enforcement."). Lovett does not offer contrary cases. He instead suggests that my background creates an appearance of impropriety because if this case went to a jury, he would strike a juror with similar experience for cause. Mot. for Recusal at 8–9. And, Lovett argues, the hypothetical juror comparison has special force because this case is not jury eligible, so the Court acts as the factfinder. *See* 28 U.S.C. § 2402.

That argument is misguided. To start, a prospective juror with a law enforcement background would not necessarily be struck for cause. The determinative factor would be whether the juror could fairly discharge his duty notwithstanding his background. *See, e.g.*, *United States v. Maldonado-Rivera*, 922 F.2d 934, 970–71 (2d Cir. 1990) (holding, in a criminal case, that a district court is "not required to excuse any juror on the basis of his occupational background so long as the court is able to conclude that the juror would be able to view the evidence with impartiality and to decide the case without bias"); *United States v. McCullah*, 76 F.3d 1087, 1100 (10th Cir. 1996) (similar). And here the relevant standard imposes at least as high a bar before disqualifying a judge. Section 455(a)'s reasonable observer test "assume[s] that judges are ordinarily capable of setting aside their own interests" and acting impartially. *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 91 (D.D.C. 2011). Lovett offers nothing to overcome that assumption. And he offers no caselaw connecting his jury for-cause removal argument with § 455 or suggesting a special recusal standard applies for bench trials.

Second, § 455(b)(1)'s concern with extrajudicial knowledge does not require recusal. Lovett is not concerned about extrajudicial knowledge of the events that led to this lawsuit. Mot. for Recusal at 8. He focuses instead on the possibility that I was trained in "the use-of-force continuum" or other "use-of-force assessment" as a police officer. *Id.* Again, that training

5

concerns him because the United States' liability will turn on whether Officer Lineberger reasonably used his taser against Lovett. *See id.* at 7. To that end, the parties disagree over acceptable use-of-force standards and Lovett offers a former Maryland state trooper and FBI special agent as an expert on the use-of-force continuum and law enforcement tactics. *See* Pl.'s Stmt. of Material Facts ¶¶ 119–23; Excerpts from Tyrone Powers, Ph.D., Dep., ECF No. 46-3.

My past training does not require recusal. As previously disclosed, I have undergone use-of-force training. *See* June 13, 2025 Hr'g Tr. at 6:22–7:2. But that training has minimal bearing on this proceeding. I entered police academy 25 years ago. The passage of time alone weighs against the need for recusal. *Cf. Schurz Commc'ns v. FCC*, 982 F.2d 1057, 1061 (7th Cir. 1992) (Posner, J.) (noting in ruling on a recusal motion based on the judge's involvement in a previous matter, "[t]he lapse of time is of course one factor"). More, my training was with a local—not federal—agency in a different jurisdiction. Most importantly, unlike the Secret Service, that agency did not then utilize tasers. *See* June 13, 2025 Hr'g Tr. at 6:24–7:1. So I have never been trained in taser use. Nor have I ever used one. *See id.* at 7:1–2. For all these reasons, my experience does not cover the key issue in this proceeding—whether Officer Lineberger reasonably used his taser against Lovett. *See* Mot. for Recusal at 7. And § 455(b)(1) does not require recusal whenever a judge has some general familiarity with an issue. It requires recusal when the judge has knowledge about "disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). That is not the case here.

Ultimately, a judge has "a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (mem. of Rehnquist, J.). That principle is especially salient here, where the recusal request was filed almost two years after the initiation of the suit, despite the potential recusal issue being apparent

6

from the Court's website from the outset.  *See* U.S. Dist. Ct. for the Dist. of Colum., *Judges' Information:  District Judge Trevor N. McFadden*, https://perma.cc/6D53-64RK.  Asking a new judge to take over the case now, after discovery and initial motions practice, would be a poor use of judicial resources.

## III.

For the foregoing reasons, Lovett's arguments for recusal do not demonstrate an appearance of bias or improper extrajudicial knowledge.  Accordingly, it is:

**ORDERED** that the [43] Motion to Recuse is **DENIED**.

**SO ORDERED**.

Dated: February 6, 2026                                    TREVOR N. McFADDEN, U.S.D.J.